IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACIE LEA GALLEGOS,                          3:13-CV-01403-BR

           Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

           Defendant.


**NANCY J. MESEROW**
7540 S.W.51st Avenue
Portland, OR 97219
(503) 560-6788

           Attorney for Plaintiff

**S. AMANDA MARSHALL**
United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1044


1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DIANA ANDSAGER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075
(206) 615-3708

      Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Tracie Lea Gallegos seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's applications for Supplemental Security Income (SSI) under Title XVI and Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

      Following a review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter for the calculation and payment of benefits pursuant to Sentence Four, 42 U.S.C. § 405(g).

## ADMINISTRATIVE HISTORY

      Plaintiff protectively filed her applications for DIB and SSI on August 25, 2009, and alleged a disability onset date of

April 1, 2007.  Tr. 21-22, 75.[1]  The applications were denied
initially and on reconsideration.  An Administrative Law Judge
(ALJ) held a hearing on August 18, 2011.  Tr. 53-64.  A
supplemental hearing was held on January 10, 2012.  Tr. 35-52.
At the hearings Plaintiff was represented by an attorney.
Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on January 20, 2012, in which he
found Plaintiff is not disabled.  Tr. 16-34.  That decision
became the final decision of the Commissioner on July 2, 2013,
when the Appeals Council denied Plaintiff's request for review.
Tr. 1-3.

On August 12, 2013, Plaintiff filed a Complaint in this
Court seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born in July 1961 and was 46 years old on her
alleged onset date.  She completed a General Equivalency Diploma.

Plaintiff alleges disability due to "bipolar/add/ptsd/
chronic depression/back and hip pain."  Tr. 199.


## STANDARDS

The initial burden of proof rests on the claimant to

---

[1] Citations to the official transcript of record filed by
the Commissioner on January 30, 2012, are referred to as "Tr."

3 - OPINION AND ORDER

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d

4 - OPINION AND ORDER

at 690).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY EVALUATION

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R.

§ 416.920(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The
criteria for the listed impairments, known as Listings, are
enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed
Impairments).

If the Commissioner proceeds beyond Step Three, she must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§ 416.920(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A
'regular and continuing basis' means 8 hours a day, for 5 days a
week, or an equivalent schedule."  SSR 96-8p, at *1.  In other
words, the Social Security Act does not require complete
incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*,
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. § 416.920(a)(4)(iv).
*See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy.  20 C.F.R. § 416.920(a)(4)(v).  *See also*
*Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the

6 - OPINION AND ORDER

Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since her April 1, 2007, onset date. Tr. 21.

At Step Two the ALJ found Plaintiff has severe impairments of bipolar disorder, depression, an anxiety disorder, left-hip degenerative joint disease, degenerative disc disease of the lumbar spine, hepatitis C, and hearing loss. *Id.*

At Step Three the ALJ determined Plaintiff's impairments did not equal in severity a listed impairment, and the ALJ found Plaintiff retained the RFC to perform less than a full range of light work. The ALJ found Plaintiff can lift and carry ten pounds frequently and 20 pounds occasionally, cannot do telephone work, can stand/walk for four hours out of an eight-hour day, and cannot walk on uneven terrain. She can sit for eight hours of an

7 - OPINION AND ORDER

eight-hour day.  Finally, the ALJ determined Plaintiff is limited
to simple, routine tasks without public contact and only
occasional interaction with coworkers.  Tr. 23.

At Step Four the ALJ found Plaintiff could not return to her
past relevant work as a telemarketer.  Tr. 26.

At Step Five the ALJ found Plaintiff was capable of
performing other work, including small-products assembler, hand-
packager, and sorter.  Tr. 27.


## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to find
Plaintiff's PTSD and ADHD were severe impairments at Step
Two, (2) finding Plaintiff less than fully credible, and
(3) improperly evaluating Plaintiff's RFC.

### I.    The Medical Evidence and Testimony

In October 2007 Plaintiff was diagnosed with PTSD by
treating psychologist Ken Ihli, Ph.D.  Tr. 287.  He noted
Plaintiff's history of abuse, nightmares, hypervigilance,
hyperstartle response, difficulty sleeping, and intrusive
memories.  Tr. 287.  Dr. Ihli found PTSD limited Plaintiff from
interacting with men of a certain appearance, from coping with
certain environments, and from communicating with others.
Dr. Ihli also found PTSD impacted Plaintiff's ability to sleep
and to concentrate resulting "in a severe impairment in her

functioning."  Tr. 287.

In April 2008 Alphonsa Ahanotu, R.N., P.M.H.N.P., noted
Plaintiff was cutting her arms, had rapid cycling moods, and was
tearful with circumstantial thought processes and audio
hallucinations.  Tr. 305.  R.N. Ahanotu diagnosed Plaintiff with
Bipolar I disorder, hypomania, and PTSD.  Tr. 306.

In July 2008 psychiatrist Jon Betlinski, M.D., diagnosed
Plaintiff with Bipolar I Disorder and PTSD.  Tr. 308.
Dr. Betlinski noted Plaintiff was fidgety, continued to have
audio hallucinations, and titrated her Seroquel for improved mood
stability.  Plaintiff continued to be manic.

On September 17, 2008, treating physician Lisa Boyd, M.D.,
diagnosed Plaintiff with Bipolar I Disorder, hypomania, and PTSD.
Plaintiff was participating in vocational rehabilitation three
days a week at the time and wanted to work.  Tr. 310.  Dr. Boyd
prescribed Strattera "to see if that helps increase [Plaintiff's]
attention/focus while decreasing her anxiety." *Id.*  Dr. Boyd
noted Plaintiff did not think she could remember to take
Strattera in the morning and Seroquel in the evening.  Plaintiff
made good eye contact and had fair concentration, insight, and
judgment, but she was disheveled, anxious, and nervous.

In July and August 2009 Plaintiff's treating counselor,
Natalia Tommasi, M.A., recorded Plaintiff was homeless, very
agitated, crying, and overwhelmed.  Tr. 313-14.  Plaintiff could

not sit or stand for long and was fidgety.  On August 6, 2009, Plaintiff was in the emergency room for anxiety.  On August 24, 2009, Counselor Tommasi reported Plaintiff had anxiety attacks with vomiting and was unable to breathe for 45-60 minutes. Plaintiff had five or six such attacks since January and was manic two or three times a month.  Plaintiff reported visual and audio hallucinations, and she was crying, disheveled, agitated, and irritable.  Tr. 322.

On August 28, 2009, Dr. Boyd increased Plaintiff's Seroquel. Tr. 324.

In October and November 2009 Plaintiff told Counselor Tommasi that she was homeless, had visual and auditory hallucinations, and experienced great difficulty when around other people.

In December 2009 Plaintiff began treatment with counselor Amber McKinnie, M.S.W., Q.M.H.P.  Tr. 458.  Plaintiff was homeless, and reported she was not able to use public restrooms. Plaintiff also reported auditory and visual hallucinations, that she fought the urge to cut herself, and that she "isolated" and had anxiety attacks every few days.  On January 4, 2009, Counselor McKinnie noted her treatment plan included the improvement of Plaintiff's hygiene and self-care to decrease Plaintiff's anxiety and to discourage her from cutting herself.

On January 8, 2010, Dr. Boyd completed a form in which she

noted she had been treating Plaintiff since August 2007.
Tr. 476.  Dr. Boyd indicated Plaintiff had generalized persistent
anxiety, mood disturbance, hallucinations, and sleep disturbance.
Tr. 477.  Dr. Boyd stated Plaintiff was not malingering, and
Plaintiff would need to work at a reduced pace if employed full-
time.  Tr. 479.  Dr. Boyd opined Plaintiff's ability to work 40
hours a week was poor.  *Id.*  Dr. Boyd stated Plaintiff would have
substantial difficulty dealing with the public, supervisors, or
co-workers and that symptoms would cause her to miss work at
least four days a month  Tr. 480.

Tatsuro Ogisu, M.D., conducted a comprehensive orthopedic
examination of Plaintiff on February 22, 2010.  Tr. 515-18.
Plaintiff had experienced left hip pain since a 1994 hip
replacement, and Dr. Ogisu concluded her "claim that the hip is
wearing out is plausible."  Tr. 517.  Dr. Ogisu found Plaintiff's
back pain mechanical, possibly discogenic, without neural
impingement.  He diagnosed Plaintiff with mild left-knee
degenerative disease and mild leg-length discrepancy.  Dr. Ogisu
stated Plaintiff could sit, stand, or walk up to six hours in an
eight-hour day and lift or carry up to ten pounds.

On February 24, 2010, Georgia Wilcox, Psy.D., conducted a
psychodiagnostic evaluation of Plaintiff.  Tr. 519-25.  Plaintiff
was taking Seroquel, Stratterea, Prilosec, Lorazepam, Ambien, and
Hydrocodone.  Tr. 522-23.  Dr. Wilcox noted Plaintiff was

defensive and impatient.  Tr. 523.  Her diagnostic impression of
Plaintiff was Bipolar I Disorder, PTSD, amphetamine dependence in
full sustained remission, and antisocial characteristics.
Tr. 524-25.  Dr. Wilcox noted Plaintiff "demonstrated deficits
with short-term memory and attention and concentration."
Tr. 525.  Dr. Wilcox stated Plaintiff

> appears to be benefitting from the stabilization
> and support garnered through Life Works Northwest,
> she does not appear psychologically stable
> enough to independently participate in the work
> force at this time.  Without further assessment,
> it is difficult to determine whether memory,
> attention and concentration abilities have been
> permanently compromised as a result of previous
> extensive drug use or if they can be regained
> through rehabilitative treatment.  Regardless,
> she has demonstrated today that she cannot
> currently understand and remember instructions,
> sustain concentration and attention and persist,
> or engage in appropriate social interaction.

*Id.*

     In April 2010 Plaintiff reported to Counselor McKinnie that
she was overwhelmed, was failing to take her medications, was
depressed, and had been hearing voices.  Tr. 987.  Plaintiff also
reported she was irritable, tearful, and in pain.  She found it
very difficult to take the bus and wanted to avoid being in
public.  In May 2010 Plaintiff reported she was hallucinating and
cutting herself.  Tr. 994.  She was also "visibly distressed" by
the paperwork required for her Social Security and Oregon Health
Plan claims.

     Nancy Loeb, M.D., completed a form regarding Plaintiff on

12 - OPINION AND ORDER

June 21, 2010.  Tr. 439-46.  Dr. Loeb reported she had been
Plaintiff's treating physician for five years.  Her diagnoses
were depression, bipolar, chronic back pain, problems with her
left-hip replacement, and rotator-cuff tear.  Dr. Loeb stated
Plaintiff would experience substantial difficulty with stamina,
pain, or fatigue if she worked full-time.  Tr. 400.  Dr. Loeb
opined Plaintiff would need to work at a reduced work pace, was
not malingering, and her symptoms would often interfere with
concentration and attention.  Tr. 441.  Dr. Loeb stated Plaintiff
was incapable of even low-stress jobs.  Tr. 442.

## I.  The ALJ Erred at Step Two

At Step Two the ALJ determines whether the claimant has a
medically severe impairment or combination of impairments.  *Bowen
v. Yuckert,* 482 US 137, 140-41 (1987).  The Social Security
Regulations and Rulings as well as the courts that apply the
Regulations and Rulings refer to the Step Two severity
determination in terms of what is "not severe."  According to the
Regulations, "an impairment is not severe if it does not
significantly limit [the claimant's] physical ability to do basic
work activities."
20 C.F.R. § 404.1521(a).  The claimant's physical ability to do
"basic work activities" are "abilities and aptitudes necessary to
do most jobs, including, for example, walking, standing, sitting,
lifting, pushing, pulling, reaching, carrying or handling."  20

C.F.R. § 404.1521(b).

The Step Two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 U.S. at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28. *See also Yuckert v. Bowen,* 841 F2d 303, 306 (9th Cir 1988)(adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508.

The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Generally the failure to identify an impairment as "severe" at Step Two is harmless error because the ALJ continues the analysis and the question becomes whether the ALJ has properly included all functional limitations in the claimant's RFC. *Lewis v. Apfel,* 236 F.3d 505, 511 (9th Cir. 2001). Here, however, the circumstances are unusual because Plaintiff's treating physician, Dr. Ihli, specifically identified Plaintiff as having functional limitations arising from PTSD, including hypervigilance, hyperstartle response, inability to concentrate, inability to

interact with men of a certain appearance, inability to cope with certain environments, and difficulty communicating.  Tr. 287. Although the ALJ noted Dr. Ihli's PTSD diagnosis, he did not further address Dr. Ihli's opinion.  Tr. 24.

On this record the Court concludes the ALJ erred at Step Two when he failed to find PTSD a severe impairment and determined Plaintiff failed to meet her burden of establishing a medically determinable impairment that caused more than a minimal effect on her ability to perform work-related activities because the ALJ did not provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## II.  Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.  *See also Vasquez v. Astrue,* 547 F.3d 1101, 1104 (9th Cir. 2008).  The ALJ's findings, however, must be supported by specific, cogent reasons.  *See also Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001).  Unless there is affirmative evidence that shows the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing."  *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1998).  The ALJ must identify the testimony that is not credible and the evidence that undermines the claimant's complaints.  *Id.*  The evidence upon which the ALJ relies must be

substantial.  *Id.* at 724.  *See also Holohan,* 246 F.3d at 1208.

General findings (*e.g.*, "record in general" indicates

improvement) are an insufficient basis to support an adverse

credibility determination.  *Reddick,* 157 F.3d at 722.  *See also*

*Holohan,* 246 F.3d at 1208.  The ALJ must make a credibility

determination with findings sufficiently specific to permit the

court to conclude that the ALJ did not arbitrarily discredit the

claimant's testimony.  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th

Cir. 2002).

In deciding whether to accept a claimant's subjective

symptom testimony, "an ALJ must perform two stages of analysis:

the *Cotton* analysis and an analysis of the credibility of the

claimant's testimony regarding the severity of her symptoms."

*Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996).

> Under the *Cotton* test, a claimant who alleges
> disability based on subjective symptoms "must
> produce objective medical evidence of an under-
> lying impairment which could reasonably be
> expected to produce the pain or other symptoms
> alleged."  *Bunnell,* 947 F.2d at 344 (quoting
> 42 U.S.C. § 423(d)(5)(A) (1988)); *Cotton,* 799
> F.2d at 1407-08.  The *Cotton* test imposes only
> two requirements on the claimant:(l) she must
> produce objective medical evidence of an
> impairment or impairments; and (2) she must
> show that the impairment or combination of
> impairments *could reasonably be expected to*
> (not that it did in fact) produce some degree
> of symptom.

*Smolen,* 80 F.3d at 1282.  *See also Carmickle v. Comm'r Soc. Sec.*

*Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008).

16 - OPINION AND ORDER

The ALJ found Plaintiff's statements as to the severity of her impairments less than fully credible.  Tr. 23.  Among other things, the ALJ noted Plaintiff's history of felony convictions for illegally obtaining public assistance, forgery, and drug offenses.  *Id.*  The ALJ also noted Plaintiff gave inconsistent statements to Dr. Wilcox regarding marijuana use.  Thus, the ALJ articulated clear and convincing reasons for finding Plaintiff's symptom testimony less than fully credible.

On this record the Court finds the ALJ did not err when he found Plaintiff's testimony less than fully credible because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## III.  The Medical Evidence

Disability opinions are reserved for the Commissioner.  20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1).  If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and to observe the patient as an individual.  *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007).  In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician.  *Id.*  If

a treating or examining physician's opinion is not contradicted
by another physician, the ALJ may only reject it for clear and
convincing reasons.  *Id.* (regarding treating physician).  *See
also Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006)
(regarding examining physician).  Even if one physician's opinion
is contradicted by another physician, the ALJ may not reject one
of the opinions without providing specific and legitimate reasons
supported by substantial evidence in the record for doing so.
*Orn,* 495 F.3d at 632.  *See also Widmark,* 454 F.3d at 1066.  The
opinion of an nonexamining physician by itself is insufficient to
constitute substantial evidence to reject the opinion of a
treating or examining physician.  *Widmark,* 454 F.3d at 1066 n.2.
The ALJ may reject physician opinions that are "brief,
conclusory, and inadequately supported by clinical findings."
*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

**A.  Dr. Wilcox (Examining Psychologist)**

Dr. Wilcox opined Plaintiff was not psychologically stable
enough to participate in the work force, had an inability to
understand and to remember instructions, to sustain
concentration, or to engage in appropriate social interaction.
Tr. 24.  The ALJ gave little weight to Dr. Wilcox's opinion.  *Id.*
The ALJ stated the Plaintiff's "presentation to Dr. Wilcox was
angry, impatient, defensive and peppered with expletives" even
though Plaintiff was pleasant and cooperative when seen by

Dr. Ogisu two days later.  *Id.*  The ALJ also noted Plaintiff was
not entirely forthcoming with Dr. Wilcox regarding marijuana use.
Neither of the ALJ's reasons, however, are clear, convincing,
specific, or legitimate reasons to support the ALJ's rejection of
Dr. Wilcox's opinion, particularly in light of the fact that
Dr. Wilcox's opinion is consistent with the opinion of
Plaintiff's treating physicians.

### B.  Dr. Boyd (Treating Psychiatrist)

As noted, treating psychiatrist Dr. Boyd found Plaintiff had
significant, disabling functional limitations.  The ALJ, however,
gave Dr. Boyd's opinion little weight on the ground that it was
inconsistent with the treatment record.  *See* Tr. 24.  Careful
review of the entire treatment record, however, indicates
Dr. Boyd's treatment record is consistent with his opinion about
Plaintiff's functional limitations.  Thus, the ALJ failed to
provide clear and convincing reasons supported by the record for
rejecting Dr. Boyd's opinion.

### C.  Dr. Loeb (Treating Physician)

As noted, Dr. Loeb, treating physician, opined Plaintiff
had numerous disabling functional limitations.  The ALJ gave
little weight to Dr. Loeb's opinion.  The ALJ stated Dr. Loeb
"provides no clear basis for the described limitations."  Tr. 25.
The record, however, contains multiple references to Plaintiff's
breathing difficulties, which would support a limitation from

respiratory irritants.  Tr. 332-35, 339-40, 346-47.  The ALJ
noted Plaintiff's hearing loss, which supports Dr. Loeb's
prohibition of Plaintiff being exposed to noise.  Tr. 26.
Finally, the record contains substantial evidence that moving
from sitting to standing; rising from a chair; and sitting,
crawling, bending, stooping, twisting, and kneeling have
dislocated Plaintiff's hip in the past, which supports
Plaintiff's limitations on those activities.  Tr. 706, 715, 725,
736, 745, 755, 777, 786-87, 811, 820, 830, 839, 849, 857, 1256.

On this record the Court concludes the ALJ erred when he
rejected the opinions of Plaintiff's treating and examining
physicians because the ALJ failed to provide legally sufficient
reasons supported by the record for doing so.

## REMAND

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Harman v. Apfel*, 211 F.3d 1172,
1179 (9th Cir. 2000).  When "the record has been fully developed
and further administrative proceedings would serve no useful
purpose, the district court should remand for an immediate award
of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir.
2004).

The decision whether to remand this case for further

20 - OPINION AND ORDER

proceedings or for the payment of benefits is a decision within the discretion of the court. *Harman*, 211 F.3d 1178.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).  If the reviewing court finds the conditions of the "credit-as-true" rule are satisfied, however, the court may only remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that the claimant is, in fact, disabled." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

Here the Court has determined the ALJ erred when she rejected the opinions of Drs. Wilcox, Loeb, and Boyd.  If credited, those opinions establish that Plaintiff is disabled.

21 - OPINION AND ORDER

Thus, the Court concludes Plaintiff is disabled based on this medical record and, therefore, no useful purpose would be served by a remand of this matter for further proceedings.  *See Harman,* 211 F.3d at 117.


## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 6th day of November, 2014.


_____
ANNA J. BROWN
United States District Judge

22 - OPINION AND ORDER